UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | NO. 3:16-CR-347 |
|---|---|
| v. | (MARIANI, J.) |
| | (SAPORITO, M.J.) |
| FRANK J. CAPOZZI, | |
| Defendant. | |

# MEMORANDUM

This matter is before the court on the motion for release from custody (Doc. 240) filed by the defendant, Frank J. Capozzi.

Capozzi, who is currently awaiting sentencing, seeks his release from custody pending sentencing based on prison conditions at the Lackawanna County Prison (LCP) and the inherent risk posed by his being confined in close quarters to a large number of other inmates during the COVID-19 global pandemic given his health risk of being over the age of 60. In his motion, Capozzi has certified that the assigned assistant United States attorney does not concur in his motion. (*Id.* at 12.) Government counsel filed a notice of consultation with counsel indicating that the parties have been unable to resolve the motion. (Doc. 243). Neither the defendant nor the government has requested a

hearing. The government filed a brief in opposition to the defendant's motion (Doc. 247), and Capozzi filed a brief in support of his motion (Doc. 250). The matter is ripe for a decision.

## I. *Statement of Facts*

A federal grand jury indicted Capozzi on November 30, 2016, charging him with conspiracy to defraud the United States by obtaining the payment or allowance of false, fictitious, or fraudulent claims, 18 U.S.C. § 286, aggravated identity theft, 18 U.S.C. § 1028A, and related charges. He was initially detained without a hearing because he was still serving a state prison sentence. On May 16, 2018, the late Honorable James M. Munley[1] granted Capozzi's motion for release because he had completed his state prison sentence. (Doc. 87).

On January 25, 2019, after a hearing on a government motion to revoke Capozzi's release on bond for violation of a protection from abuse order, Judge Munley ordered Capozzi detained pending trial under 18 U.S.C. § 3142(e). (Doc. 135). On September 11, 2019, Capozzi pled guilty

---

[1] The Honorable James M. Munley passed away on March 22, 2020. On March 24, 2020, this case was reassigned to the Honorable Robert D. Mariani. Thereafter, this motion was referred to the undersigned United States magistrate judge for disposition.

2

to Counts 1 and 7 of the Indictment (conspiracy to defraud the government and aggravated identity theft). For these offenses, Capozzi faces a statutory mandatory minimum term of two years imprisonment and a guideline range of 70 to 81 months imprisonment. The presentence report, as amended, has been completed and character letters have been docketed. A sentencing hearing was originally scheduled for December 11, 2019. (Doc. 180.) It was continued twice at the defendant's request (Doc. 211; Doc. 229), and on March 27, 2020, the sentencing hearing was continued indefinitely due to the COVID-19 crisis (Doc. 241). *See generally* General Order 20-01 (Mar. 13, 2020) (continuing all in-person criminal hearings for a period of sixty days), *supplemented by* General Order 20-01 Supp. (Mar. 18, 2020), *extended by* General Order 20-10 (Apr. 8, 2020) (extending duration of general continuance through May 31, 2020).

In his brief, Capozzi seeks release because of the existence of COVID-19, arguing that it is an "exceptional reason" under 18 U.S.C. § 3143(c), and because of alleged adverse conditions of LCP, contending that these conditions impair his ability to prepare his defense and increase his risk of exposure to COVID-19. Capozzi contends that the

health risks associated with COVID-19 are heightened for him because he is 62 years old, obese, and immunocompromised. (Doc. 250, at 2). The government contends that Capozzi continues to represent a flight risk and a danger to the community, and that no conditions or combination of conditions would ensure his appearance for sentencing and the safety of the community, notwithstanding the health risks posed by COVID-19—risks that will exist regardless of his detention status. (Doc. 247, at 4).

## II. *Discussion*

### a. *COVID-19 Global Pandemic*

We are mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents.[2] "COVID-19 is the infectious disease caused by the novel coronavirus." *United States v. Roeder*, __ Fed. App'x ___, 2020 WL 1545872, at *1 (3d. Cir. Apr. 1, 2020) (per curiam). We are also cognizant that the President of the United States has declared a national emergency and the Governor of Pennsylvania has declared a state of emergency and issued a stay-at-home order through April 30, 2020. Further, the Governor has ordered

---

[2] World Health Org., *WHO Characterizes COVID-19 as a Pandemic* (Mar. 11, 2020), https://www.who.int/emergencies/diseases/novel-coronavirus-2019/events-as-they-happen.

4

all schools to remain closed for the remainder of the 2019-2020 academic school year. We also recognize that public health officials have strenuously encouraged the public to practice "social distancing," to hand-wash and/or sanitize frequently, and to avoid close contact with others—all of which presents challenges in detention facilities. *See Roeder*, 2020 WL 1545872, at *2; *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *2 (D. Md. Mar. 17, 2020).

### b. *Conditions of LCP*

Capozzi's motion identifies the conditions of the LCP as housing 600 inmates, with a physical structure and layout that increases the risk for spread for any virus. As a consequence, Capozzi contends that it is difficult or impossible for those inmates most at risk to engage in social distancing and self-quarantine precautions as recommended by the Center for Disease Control. Inmates share toilets, sinks, phones, living areas, and shower facilities. There are restrictions on movement, the size of individual cells, and shared spaces. Lawyer visits have been limited, the ability to secure interpreters is difficult, and lawyers are who are at higher risk due to age and chronic health problems—or who themselves care for other high-risk individuals—are limited in making visits with

5

inmates. (Doc. 240 ¶¶ 17-23). In his brief in support, Capozzi referenced a recent disclosure that a guard at LCP recently tested positive for the COVID-19 virus and had been working in the facility for a period from mid- to late March 2020. (Doc. 247, at 9; Doc. 250, at 11).

The government proffers in its brief that LCP has reported no positive COVID-19 cases among its inmate populations. (Doc. 247, at 9). We further take judicial notice of recent policies and procedures adopted by LCP to prevent or limit the spread of COVID-19 within the prison. *See Shakur v. Costello*, 230 Fed. App'x 199, 201 (3d Cir. 2007) (per curiam) (taking judicial notice of county prison procedures). Under these new policies and procedures, LCP has suspended contact visits, regular visitation, and visitation from volunteers, including religious leaders. It has implemented aggressive sanitation programs and suspended all programs that utilize "outside" employees. It has prohibited individuals other than prison and medical staff to proceed any further than the reception area. It has limited attorney visits with inmates to meetings through a glass partition in a lawyer visitation room unless written permission is granted by the warden or the deputy warden. It has cancelled all conferences and out-of-county training. It has provided for

6

weekly contact with officials from the state department of corrections. It has posted educational flyers in the blocks and in the reception area. It has also implemented body temperature screening checks for all employees and lawyers as they enter the facility. *United States v. Mendoza*, No. 5:20-mj-00011, 2020 WL 1663361, at *3 & n.4 (M.D. Pa. Apr. 3, 2020).

### c. *18 U.S.C. § 3143(a)—Release Pending Sentencing*

In his motion, Capozzi seeks release under 18 U.S.C. § 3143(a), contending that he should be released because the COVID-19 global pandemic together with his preexisting health conditions constitutes an "exceptional reason" why his continued incarceration would not be appropriate.[3]

The Bail Reform Act provides that an individual who has been convicted and awaiting the imposition or execution of sentence must be detained unless there is a finding "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other

---

[3] We construe Capozzi's motion to seek release under 18 U.S.C. § 3143(a) as he is seeking release "pending sentence." In his motion, Capozzi referenced § 3143(c), which addresses release or detention "pending appeal by the government." (Doc. 240 ¶ 26.) In his brief in support, Capozzi acknowledges that § 3143(a) controls here. (Doc. 250, at 2 n.1).

7

person or the community if released." 18 U.S.C. § 3143(a); *Roeder*, 2020 WL 1545872, at *2. Thus, for release to be in order, the judicial officer must find both no likelihood of flight and no dangerousness. *See United States v. Manso-Portes*, 838 F.2d 889, 889-90 (7th Cir. 1987). "The burden of establishing by clear and convincing evidence that the person will not flee or pose a danger to any other person or to the community rests with the person." Fed. R. Crim. P. 32.1(a)(6).

In his brief in support, Capozzi argues that, at age 62, he is in a high-risk category. (Doc. 250, at 15). He also states that he suffers from other ailments identified in the presentence report, such as a need for a hip replacement and a diagnosis of hepatitis C. (*Id.* at 16; Doc. 207 ¶68). Those needs and circumstances do not change despite the existence of the coronavirus pandemic. At best, Capozzi presents only speculative arguments that his confinement in the LCP increases the health risks posed by COVID-19.

Capozzi's motion is found wanting for several reasons. Other than a single guard who has had no contact with the movant, there have been no confirmed cases of COVID-19 in the LCP. Moreover, LCP has implemented new policies and procedures to protect its population as

8

referenced above. There is no evidence that such measures are, or have been, inadequate. Our court has temporarily continued all court proceedings through May 31, 2020, which should ameliorate a criminal defendant's concerns about assisting his or her attorney in the preparation of a defense. Capozzi's reasons for assisting his counsel in his defense are further diminished by the fact that the presentence report in this case has already been completed, without objection by the government or the defendant, and character letters have been received and docketed. (Doc. 207; Doc. 208; Doc. 212; Doc. 213). Further, we are confident that LCP will respect the privileged nature of the communications between attorneys and their inmate-clients, as nothing to the contrary has been alleged or otherwise brought to our attention.

In the absence of any evidence that LCP is not providing—or is unable to provide—appropriate medical care, we are not persuaded that Capozzi should be released. *See United States v. Raia*, __ F.3d ___, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) (recognizing that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and

professional efforts to curtail the virus's spread"). Accordingly, we are not convinced that we should depart from Judge Munley's prior ruling detaining Capozzi for his violation of the conditions of his release.

### d. 18 U.S.C. § 3142(i)—Temporary Release

In his brief, Capozzi also seeks relief under 18 U.S.C. § 3142(i) which allows a judicial officer, by subsequent order, to permit the temporary release of a person to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or another compelling reason. He cites the same reasons above in support of his position that the global pandemic and his heightened health risks constitute "another compelling reason" to justify his release.

Section 3142(i) constitutes a limited safety valve provision, enabling courts to re-examine detention decisions "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The defendant bears the burden of establishing circumstances warranting temporary release under § 3142(i). *See United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (collecting cases). The Court must carefully and impartially apply

the proper legal standards that govern an individual's particular request for relief. *Roeder*, 2020 WL 1545872, at *3.

Until recent events spawned by the COVID-19 global pandemic, defendants seeking release under § 3142(i) generally did so because it was necessary to prepare the person's defense. Those courts finding "another compelling reason," however, typically granted release "sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." *United States v. Lee*, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *3 (D.D.C. Mar. 30, 2020) (quoting *United States v. Hamilton*, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)); *see also United States v. Scarpa*, 815 F. Supp. 88 (E.D.N.Y. 1993) (permitting release of defendant suffering from terminal AIDS, which could no longer be managed by correctional authorities); *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143 (D.P.R. 2002) (permitting release where defendant sustained "serious" and "grotesque" gunshot wounds, suffered a heart attack, underwent an emergency tracheotomy, was partially paralyzed, could not use his hands, and had open and infected wounds about his

body, and where the United States Marshals Service refused to take custody of him until his wounds closed).

A defendant is not entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation. *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan., Mar. 25, 2020). We must make an individualized determination as to whether COVID-19 concerns are compelling in a particular case to justify temporary release under § 3142(i). *Id.* A decision on a motion seeking release under § 3142(i) entails an informed judgment assessing both individual health concerns and broader public safety interests. In reaching these judgments the court must:

> [E]valuate at least the following factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a "compelling reason" exists such that temporary release is "necessary."

*Clark*, at \*3. We incorporate our analysis above under § 3143(a) to arrive at the same conclusion here. While the court remains sympathetic to Capozzi's concerns regarding the possibility of health complications caused by the COVID-19 virus, "[s]uch speculation does not constitute a 'compelling reason' for temporary release." *United States v. Loveings*, Cr. No. 20-51, 2020 WL 1501859, at \*3 (W.D. Pa. Mar. 30, 2020); *see also United States v. Pritchett*, CR 19-280, 2020 WL 1640280, at \*3 (W.D. Pa. Apr. 2, 2020) (despite being sympathetic to defendant's medical conditions, including a diagnosis of asthma, speculation concerning possible future conditions in jail does not constitute a "compelling reason" for temporary release.); *United States v. Jones*, 2:19-CR-00249-DWA, 2020 WL 1511221, at \*3 (W.D. Pa. Mar. 29, 2020) (holding that, while the defendant suffered from hypertension, sleep apnea, and asthma, and it is true that individuals with respiratory issues are at higher risk for COVID-19, his present health conditions were not sufficient to establish a compelling reason for release in light of the danger to the community posed by his release and the efforts undertaken at the jail to combat the spread of the virus) (citing *United States v. Davis,* 2020 U.S. App. LEXIS 9987 (3d Cir. Mar. 20, 2020)).

The mere presence of the virus, even in the detention setting, does not automatically translate to the release of a person accused. *United States v. Williams*, No. PWG-19-8, 2020 WL 1643662, at *2 (D. Md. Apr. 2, 2020) (denying defendant's motion even where at least five inmates had tested positive for COVID-19 and defendant suffered from allergies and asthma); *United States v. Bilbrough*, TDC-20-0033, 2020 WL 1694362 (D. Md. Apr. 7, 2020) (affirming magistrate judge's denial of motion by defendant who suffered from diabetes); *United States v. Julius Williams*, PWG-13-544, 2020 WL 1434130 (D. Md. Mar. 24, 2020) (denying a 67-year-old defendant's motion); *United States v. Penaloza*, TDC 19-238, 2020 WL 1555064 (D. Md. Apr. 1, 2020) (denying motion of defendant who suffered from a heart murmur); *United States v. Jefferson*, CCB-19-487, 2020 WL 1332011 (D. Md. Mar. 23, 2020) (denying motion of asthmatic defendant). Thus, we are left to speculate whether Capozzi's continued incarceration would likely increase his risk of harm.

### III. *Conclusion*

For all of reasons set forth above, Capozzi has failed to establish by clear and convincing evidence that he is not a flight risk and that he poses no danger to the community, precluding his release under § 3143(a), nor

has he demonstrated a compelling reason for reconsideration of the Court's prior order of detention under 18 U.S.C. § 3142(i). Therefore, his motion is denied.

An appropriate order follows.

***s/Joseph F. Saporito, Jr.***
JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated: April 13, 2020