THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : 3:16-CR-347 |
| | : (JUDGE MARIANI) |
| FRANK J. CAPOZZI, | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is Defendant Frank Capozzi's letter-motion requesting early termination of his supervised release (Doc. 362), filed approximately 18 months into his 36-month term of supervised release. The parties have fully briefed the motion (Docs. 362, 364) and the motion is ripe for disposition. For the reasons that follow, Defendant's motion will be denied.

### II. ANALYSIS

"[T]he primary purpose of supervised release is to facilitate the integration of offenders back into the community rather than to punish them." *United States v. Murray*, 692 F.3d 273, 280 (3d Cir. 2012) (quoting *United States v. Albertson*, 645 F.3d 191, 197 (3d Cir. 2012)). Congress has thus provided the sentencing court with the authority to terminate a defendant's term of supervised release early. *See Burkey v. Marberry*, 556 F.3d 142, 146 n.3 (3d Cir. 2009) ("Pursuant to 18 U.S.C. § 3583(e), only the sentencing court has the authority to modify [a defendant's] term of supervised release"). Pursuant to 18 U.S.C. §

3583, "[t]he court may, after considering the factors set forth in [18 U.S.C. §] 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). "'The expansive phrases "conduct of the defendant" and "interest of justice" make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination.'" *United States v. Melvin*, 978 F.3d 49, 53 (3d Cir. 2020) (quoting *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014)).

> The § 3553(a) factors cited in § 3583(e)(1) are as follows:
>
> (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and sentencing range established for the defendant's crimes; (4) pertinent policy statements issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

*Melvin*, 978 F.3d at 53 (quoting *United States v. Davies*, 746 F.App'x 86, 88-89 (3d Cir. 2018)). "[I]t is notable that the only traditional sentencing factor *not* relevant to a court's decision of whether to impose supervised release . . . is the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just

2

punishment for the offense. . . . This omission reinforces the idea that the primary purpose of supervised release is to facilitate the reentry of offenders into their communities, rather than to inflict punishment." *Murray*, 692 F.3d at 280 (internal quotation marks, citations, and brackets omitted).

When weighing the relevant § 3553(a) factors and considering a defendant's motion for early termination of supervised release, "a district court need not find that an exceptional, extraordinary, new, or unforeseen circumstance warrants early termination of a term of supervised release before granting a motion under 18 U.S.C. § 3583(e)(1)." *Melvin*, 978 F.3d at 53. However, "'*generally*, early termination of supervised release under § 3583(e)(1)' will be proper 'only when the sentencing judge is satisfied that new or unforeseen circumstances' warrant it." *Melvin*, 978 F.3d at 53 (quoting *Davies*, 746 F.App'x at 89) (emphasis in *Melvin*).

In the present case, on September 11, 2019, Defendant Capozzi pleaded guilty to Counts 1 and 7 of the Indictment, specifically Conspiracy to Defraud the Government with Respect to Claims (Count 1) and Aggravated Identity Theft and Aiding and Abetting the same (Count 7). (*See* Docs. 1, 172, 179).

Pursuant to the Pre-Sentence Report ("PSR") (Doc. 207), to which Defendant did not object, the offense conduct which formed the basis for Capozzi's convictions included his involvement in an extensive scheme from 2010 to 2014 to defraud the Department of the Treasury through the filing of false income tax returns. Specifically, the PSR detailed that:

3

Frank Capozzi purportedly operated a number of businesses from his home in Wilkes-Barre, Pennsylvania, including a tax preparation business that he used to submit numerous fraudulent tax returns. He received hundreds of fraudulently obtained tax refunds. [Co-defendants] Krisandra Strausser Capozzi and Robert Monaco deposited the IRS tax return checks into bank accounts they controlled.

The falsified tax returns often used the identities of individuals, many of whom were incarcerated, who had no knowledge that returns were being filed in their name. Frank Capozzi mostly reported earned income for employment such as "household help" causing the United States Department of the Treasury to issue false tax refunds. In almost all instances, the tax returns were completely fraudulent.

The majority of the tax returns were identical except for the personal information. The returns were for single individuals with no dependents and income between $6,500 to $7,500. The false tax returns were filed electronically from the IP address where Frank Capozzi, Krisandra Strausser Capozzi, and Robert Monaco lived. Many of the fraudulent tax returns listed Frank Capozzi's telephone number as a contact number and listed the taxpayer's address as one of five addresses at which Frank Capozzi, Krisandra Strausser Capozzi, or Robert Monaco lived, rented, or owned. The tax refunds were deposited in bank accounts belonging to Frank Capozzi, Krisandra Strausser Capozzi, or Robert Monaco. Frank Capozzi and Krisandra Strausser Capozzi endorsed the back of several of the tax return checks that were deposited into these accounts.

. . .

Agents confirmed through interviews and other methods that Frank Capozzi, Krisandra Strausser Capozzi, and Robert Monaco were responsible for hundreds of fraudulent tax filings. Although the plea agreement indicates that the defendant is responsible for restitution of $398,991.05, the Government has since determined that the false claim amount is $519,690 and resulted in a tax loss and restitution of $397,670.05. Details of the investigation indicate that Frank Capozzi was the primary actor in the scheme. . .

With regards to Count 7, Aggravated Identity Theft, Frank Cappozzi used Ara McCall's personal identifying information to file tax returns in her name, without her permission. He submitted the fraudulent tax return through an interstate wire transfer.

(Doc. 207, ¶¶ 9-11, 15-16).

The PSR further detailed Defendant's lengthy criminal history since the age of 19. The most recent convictions prior to the commencement of the instant case in 2016 include a state court conviction in 2013 for "Fraud in Completing Insurance Claims; Insurance Fraud; Theft by Deception; and Conspiracy – Theft by Deception" due to Capozzi's submission in 2011 of false employment information to Allstate Insurance to receive disability benefits to which he was not entitled and another state court conviction in 2014 for "Fraud Obtaining Food Stamps/Assistance" for submitting fraudulent forms in 2012 and 2013 to the Luzerne County Public Assistance that resulted in him receiving $14,490 in Supplemental Nutrition Assistance Program benefits for which he did not qualify. (Doc. 207, ¶¶ 43, 44).

On September 9, 2020, this Court sentenced Capozzi to a term of incarceration of 70 months, to be followed by a term of supervised release of 3 years. (Doc. 271). Capozzi began his three-year term of supervised release in mid-2023 and has now served approximately 20-months of his supervised release term. By letter-motion dated November 12, 2024, Capozzi moved for early termination of his supervised release. (Doc. 362).

Upon consideration of the statutory factors, it is evident that early termination is not "warranted by the conduct of [Capozzi] . . . and the interest of justice", 18 U.S.C. § 3583(e)(1). Defendant's motion will thus be denied.

Defendant sets forth several bases in support of his present motion. He first asserts that he has "complied with ALL the conditions that [the Court] imposed upon" him. (Doc. 362, at 1) (capital letters in original). Capozzi further states that he has reestablished relationships with his adult children and grandchildren, as well a "majority" of his friends, and that, as of February of 2024, he has been given "total custody" of his 16-year-old grandson. (Id.). He has also "reconnect[ed] to the church" and "reestablished [his] bond" with his Episcopalian pastor "as a facilitator in the men's drug program . . . to give back to maintain [his] sobriety." (Id. at 1-2).

Preliminarily, there is little evidence that "new or unforeseen circumstances" have arisen warranting the early termination of Defendant's supervised release.[1] The only arguably "new or unforeseen circumstance" that has arisen since the time of Capozzi's sentencing in 2020 is the award of custody of his teenage grandson in early-2024. However, Capozzi does not assert that his supervised release prevents him from fully attending to the needs of his grandson or that the custody of his grandson in some manner may justify a modification or termination of his supervised release.

---

[1] This Court recognizes that the Third Circuit has "disavow[ed] any suggestion that new or unforeseen circumstances *must* be shown", *Melvin*, 978 F.3d at 53 (emphasis added), but it is nonetheless one of a number of factors that this Court should consider in determining the merits of Defendant's motion. *See e.g. id.* ("We think that [g]*enerally*, early termination of supervised release under § 3583(e)(1) will be proper only when the sentencing judge is satisfied that new or unforeseen circumstances warrant it. That is because, if a sentence was 'sufficient, but not greater than necessary' when first pronounced, 18 U.S.C. § 3553(a), we would expect that something will have changed in the interim that would justify an early end to a term of supervised release.") (some internal citations and quotation marks omitted) (emphasis in original).

6

Here, Defendant Capozzi has done what is required of him while on supervised release. Mere compliance with "ALL" of the terms of his supervised release does not entitle Defendant to early termination of his three-year term of supervised release. *See e.g., United States v. Laine*, 404 F.App'x 571, 573-574 (3d Cir. 2010) ("Simple compliance with the conditions of supervised release are expected and not exceptional") *abrogated by United States v. Melvin*, 978 F.3d 49 (3d Cir. 2020); *United States v. Welling*, 2021 WL 409834, *4 (W.D. Pa. 2021) ("Compliance with the conditions of supervision, including refraining from engaging in criminal conduct, is *required* behavior while serving a term of supervised release.") (citing *United States v. Banks*, 2015 WL 926534, at *4 (W.D. Pa. 2015)) (emphasis in original).

Moreover, upon consideration of the nature and circumstances of the fraud and identity theft offenses for which Capozzi was convicted, including his extensive scheme to defraud the Department of the Treasury through the filing of hundreds of false income tax returns over the span of approximately four years, it is not in the interests of justice to terminate Defendant's supervision early. Continued supervised release also provides possible deterrence to further criminal conduct, *i.e.* participation in another scheme to defraud government entities, and works to aid in the protection of members of the public, to the extent possible. Defendant's compliance with the terms of his supervised release and abstention from further criminal conduct since his release from prison may in fact demonstrate the desired deterrent effect of the supervised release on Defendant to refrain

7

from engaging in further unlawful behavior. *See e.g. United States v. Miles*, 2020 WL 4904019, *3 (W.D. Pa. 2020) ("Indeed, the fact of compliance may very well mean that supervision is serving its deterrent and rehabilitative purposes and continuation of it to full term will achieve its desired effects on the supervised individual and community."). In addition, Capozzi's history and characteristics, and in particular his history of engaging in various types of fraudulent activity since 2010 as evidenced by his convictions in the current action as well as those in 2013 and 2014, weigh against early termination of his supervised release and demonstrate a need for continued supervision. These facts all support a finding that Defendant, and the public, are best served by continuing Defendant's supervised release and further aiding him in his ongoing rehabilitation.

For these reasons, and upon consideration of each of the relevant statutory factors, the specific facts and circumstances of this case, and the arguments presented in the parties' letters and briefs, the Court finds that the purposes to be served by the imposition of supervised release by the Court have not yet been satisfied at this time. Consideration of the relevant § 3553 factors weigh in favor of requiring Defendant to serve the remaining term of his supervised release. Defendant's motion will therefore be denied.

## III. CONCLUSION

For the foregoing reasons, Defendant Capozzi's letter-motion requesting early termination of his supervised release (Doc. 362) will be denied. A separate order follows.

Robert D. Mariani
United States District Judge